UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17 CR 16 SNLJ (ACL) ) |
| DALVIN D. LAWRENCE, | ) ) |
| Defendant. | ) |

# **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

## **I. Background**

The Defendant, Dalvin D. Lawrence, is charged with being a felon in possession of a firearm. (Doc. 2.) Lawrence filed a Motion to Suppress (Doc. 20) evidence and statements claiming that he was unlawfully detained when officers seized evidence from him. He alleges that it was unlawful for officers to order him to sit down and then lie on the ground when he was present during the arrest of another man. Lawrence claims that he was detained by the officers "in the absence of a warrant, probable cause, reasonable suspicion, or other justification in violation of his rights under the Fourth Amendment…" *Id*. at 1. He requests suppression of the physical evidence seized from his person. Lawrence also requests that any statements he made be suppressed "as fruit of the unlawful search and seizure." *Id*. The Government filed a response in opposition to the Defendant's claims. (Doc. 22.)

An evidentiary hearing was held on May 10, 2017. Two officers from the Sikeston Department of Public Safety testified. The Government submitted two exhibits, including: a video-recording of part of the interaction between the officers and the men, and a photograph of the gun seized from Lawrence.

In consideration of the evidence and information submitted by the parties, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motion to Suppress Evidence be denied.

## II. Proposed Findings of Fact

On February 1, 2017, Captain Andy Cooper of the Sikeston Department of Public Safety was on routine patrol when he observed Mario West driving a truck with two male passengers. There was furniture in the truck bed along with one of the men. Familiar with West, Captain Cooper checked to see if he had any "wants or warrants." Captain Cooper learned that West did not have a current driver's license and was wanted on two outstanding felony warrants.

Shortly thereafter, Captain Cooper saw West's truck parked at a residence on Adam Street. The truck was backed into the driveway and parked just outside of the carport. Cooper called for backup and two officers quickly responded to the scene, Officers Simmerman and Josh Golightly. West and two other men, Lawrence and BJ Robinson, were near the carport of the residence.

As Captain Cooper approached West and began talking about the outstanding warrants, West became nervous. When Captain Cooper directed West to put his hands

behind his back, West pushed away from Cooper and Officer Simmerman. The officers struggled with West and had to secure him with force.

Officer Golightly arrived around the time the struggle was underway. He observed that Lawrence and Robinson appeared to be moving closer to West and the officers. Officer Golightly was uncertain about their intentions and directed the men to sit down. The men followed Golightly's instruction and they sat on the edge of the carport. Shortly thereafter, Officer Golightly observed Robinson take something out of his pocket and put it in his mouth. Golightly instructed Robinson and Lawrence to lie down. Both men lay down. Officer Golightly asked Robinson to spit out whatever was in his mouth. Robinson spit out an item. Upon inspection, the officers believed the item contained marijuana or K2 (synthetic marijuana).

While Officer Golightly was interacting with Robinson, Captain Cooper approached Lawrence. Cooper was concerned about Lawrence because he observed that Lawrence kept putting his hands in his pockets. Cooper explained that if bystanders are in close proximity to an arrest and they keep putting their hands in their pockets, he always instructs the person to take their hands out.

Officer Golightly was wearing a body camera[1] while on duty that day. He turned it on shortly after instructing Robinson to spit out what was in his mouth. Around that time, the following exchange can be heard:

---

[1] Officer Golightly testified that he and four other officers had been testing the body cameras for approximately two weeks. The body camera switch had to be turned on to record interactions by flipping a switch upwards. The body camera worn by Officer Simmerman was turned off during the struggle with West so there was no recording from his body camera.

| | |
|---|---|
| Cooper: | Shut up! God d___, ya. Take your f___ hands out of your pocket. |
| Golightly: | [To Robinson:] Roll over. |
| Lawrence: | Well, I'm gonna be one hundred with you. |
| Cooper: | No you won't. |
| Lawrence: | There's a pistol in my pocket [indecipherable]… |
| Cooper: | Huh? |
| Lawrence: | There's a gun in my pocket. |
| Golightly: | Which pocket bro? |
| Lawrence: | Right there. |
| Lawrence: | [Indecipherable]… We ain't did nothin' wrong. |
| Golightly: | [To Robinson:] Roll over. [To officers:] Yeah, I'm good. |
| Dispatcher: | [indecipherable]… Do you need more? |
| Cooper: | No, we've got three detained and one firearm. |

(Gov't. Ex. #1 at 00:43-1:20.)

Lawrence was lying face down on the ground with his hands handcuffed behind his back. Captain Cooper pulled a small pistol out of Lawrence's right coat pocket while holding rubber gloves. Cooper laid the gun on the ground away from Lawrence. After donning rubber gloves, Officer Golightly picked up the pistol and inspected it. *Id*. at 02:30-02:55.

Both West and Lawrence articulated dissatisfaction with the actions of police. West continued to struggle and argue with the police, even attempting to run away after the gun was found in Lawrence's pocket. Lawrence vociferously complained that he had

done nothing wrong. West and Lawrence were arrested and transported to the police station. Robinson was released from the scene. Lawrence made additional statements to officers after being transported from the Adam Street residence.

### III. Conclusions of Law

Lawrence urges this Court to find that law enforcement officers unlawfully seized a firearm from his person on February 1, 2017, and that his statements should be suppressed as fruit of the unlawful seizure. The Government summarized the question before the Court, as follows:

> Lawrence contends that the officers were without authority to detain him at the scene of West's arrest and that any evidence obtained as a result of that detention, both the firearm and Lawrence's statements, should be suppressed. The Government understands that if Lawrence's initial seizure was lawful, then the firearm and statements made by him are admissible. The admissibility of those pieces of evidence turns on the legitimacy of Lawrence's initial detention.

(Doc. 22 at 2-3.) Narrowly framed, the issue in this case is whether, while executing an arrest warrant outside of a residence, an officer may reasonably detain associates of an arrestee for a limited duration in response to officer safety concerns. Although the undersigned found no Eighth Circuit case addressing this precise question, other jurisdictions offer instructive authority supporting that such a detention is reasonable under the Fourth Amendment.

### III.A. Detention was reasonable

A person is seized within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains [the

person']s freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotations omitted). "The Fourth Amendment protects individuals against unreasonable searches and seizures by the government." *United States v. Williams*, 521 F.3d 902, 905 (8th Cir. 2008) citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security[.]" *Maryland v. Wilson*, 519 U.S. 408, 411 (1997).

In *Wilson*, the Supreme Court found that an officer making a traffic stop may order passengers out of the car pending completion of the stop. *Id*. at 415. The Court reasoned:

> In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal.

*Id*. at 414-15.

If an officer briefly detains an individual, the relevant constitutional inquiry is whether the governmental interest is reasonable when balanced against the individual's right to be free from government intrusion. *Wilson*, 519 U.S. at 414-15. Officer safety is a "legitimate and weighty" governmental interest. *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977). When considering the importance of officer safety in the context of executing a search warrant, the Supreme Court concluded that "[t]he risk of harm to both

the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981).

In *Summers,* the Supreme Court ruled that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705 (footnotes omitted). Nearly a decade later, the Supreme Court decided that when law enforcement officers make an arrest in a home they are permitted to conduct a limited search (protective sweep) of the home to ensure their own safety. *Maryland v. Buie,* 494 U.S. 325, 327 (1990).

Similar to the Supreme Court's conclusions in *Summers*, *Buie*, and *Wilson*, the Tenth Circuit concluded it was reasonable for officers executing an arrest warrant inside a residence to detain people who arrived at the residence during the execution of the warrant on the carport of the residence. *United States v. Maddox*, 388 F.3d 1356 (10th Cir. 2004). The *Maddox* panel concluded "that officer safety may justify protective detentions." *Id*. at 1362. In coming to that conclusion, the panel reviewed their earlier decision in *Thompson v. City of Lawrence*, 58 F.3d 1511 (10th Cir. 1995) wherein they:

> considered the reasonableness of placing a bystander in temporary protective detention without a reasonable and articulable suspicion of danger when this person is in an immediately adjoining area to the arrestee. *Id.* at 1517. After balancing the bystander's Fourth Amendment interests against the governmental interest in officer safety, we rejected the Fourth Amendment challenge. *Id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8. . .(1985)). We reasoned that "[t]he governmental interest in securing the area around [the arrestee] and protecting officers from potential danger is sufficient to justify the temporary detention of [the bystander]." *Id.; see also United States v. Merkley,* 988 F.2d

> 1062, 1064 (10th Cir. 1993) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself ....") (citations omitted).

*Maddox*, 388 F.3d at 1363. One difference between the *Thompson* case discussed by the *Maddox* panel and the instant case is that Lawrence and Robinson were more than bystanders; they were associates of the arrestee.

The cases reviewed herein have involved scenarios that are different from the instant case. *Summers* discussed the reasonableness of detaining occupants of premises during the execution of a search warrant while a proper search is conducted. *Buie* examined the reasonableness of an in-house "protective sweep" incident to an in-house arrest. 494 U.S. 325. *Maddox* considered the reasonableness of a detention taking place outside of a house in which an in-house arrest was occurring. 388 F.3d at 1356. *Wilson* involved an officer making a traffic stop who ordered passengers out of the car pending the completion of the stop. 519 U.S. 408, 415. Here, the person being arrested and his associates were all outside of a residence, a public place. The two arrest warrants, as well as the fact West was driving without a license gave officers the authority to approach West and arrest him. Lawrence and Robinson were immediately in the area of West's arrest and they presented a threat to the officers' safety. Based on that threat the men were temporarily detained. Like the Tenth Circuit in *Maddox*, the undersigned concludes that the detention of Lawrence and Robinson, who Officer Golightly identified as "potentially dangerous persons for the duration" of West's arrest "qualifies as a 'reasonable step[ ] to ensure the [officers'] safety.'" *Maddox*, 388 F.3d at 1362, citing *Buie*, 494 U.S. at 334.

Similarly, the Sixth Circuit noted that "the police have the limited authority to briefly detain those on the scene, even wholly innocent bystanders, as they execute a search or arrest warrant." *Cherrington v. Skeeter*, 344 F.3d 631, 638 (6th Cir. 2003), citing *Summers,* 452 U.S. at 705; *Burchett,* 310 F.3d at 942–43; *United States v. Enslin,* 327 F.3d 788, 797 n. 32 (9th Cir. 2003) (finding that *Summers* applies in the context of arrest as well as search warrants). *See also Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) ("officers act within their *Summers* powers when they detain an individual who approaches a property being searched pursuant to a warrant, pauses at the property line, and flees when the officers instruct him to get down."); *United States v. Clark*, 337 F.3d 1282, 1288 (11th Cir. 2003) (detention of persons watching a street fight was not unreasonable even though the officer did not have any suspicion of criminal activity on the part of the noncombatants).

The officers' interference with Lawrence's liberty was not arbitrary. The officers approached West, Lawrence, and Robinson with the intent of arresting West on an active warrant. The movements of Lawrence and Robinson as Captain Cooper and Officer Simmerman attempted to arrest West gave Officer Golightly reason to believe the men posed a risk of harm to the police. "Exercis[ing] unquestioned command," *Summers*, 452 U.S. at 703, of Lawrence's and Robinson's movements was necessary and justified in those circumstances. As previously stated, West did not willingly submit to Captain Cooper's authority to arrest him. The potential for Lawrence and Robinson to contribute further to West's resistance caused another officer to protectively detain them. That detention was initially accomplished by having the men sit on the edge of the carport.

When simply sitting on the porch was not sufficient to control their movements, the officer directed the men to lie down and they were handcuffed. The detention lasted only long enough for West to be secured and his arrest completed.

The undersigned finds that the detention of Lawrence was reasonable.

**III.B. Seizure of the firearm was lawful**

Having concluded that the protective detention of Lawrence was reasonable, the next question is whether the seizure of the firearm was lawful. The facts of the case drive the answer to this question. Almost simultaneously with Lawrence being secured in handcuffs, Lawrence volunteered that he had a gun in his pocket. The consequence of his statement was that Captain Cooper seized the firearm in Lawrence's pocket. Captain Cooper was then able to secure the gun so that it would not pose a risk of danger to Lawrence, the officers, and others.

As the Supreme Court has explained, not all statements obtained by the police after a person is in custody are the result of interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). *Miranda v. Arizona* clarified that "[v]olunteered statements of any kind are not barred by the Fifth Amendment. . ." 384 U.S. 436, 478 (1966). "[T]he special procedural safeguards in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300.

The Eighth Circuit has repeatedly held that "[v]oluntary statements unprompted by interrogation are admissible with or without *Miranda* warnings." *United States v. Bailey*,

831 F.3d 1035, 1038 (8th Cir. 2016), citing *United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009). *See also United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998).

Lawrence's revelation that he had a gun in his pocket was not in response to any question or interrogation by law enforcement. It was a volunteered statement. The gun seized from Lawrence's pocket should not be suppressed.

**III.C. The Defendant's Other Statements**

Lawrence requests suppression of all his statements alleging they "are the product of unlawful seizure." (Doc. 20 at 2.) He argues that his statements were the result of the alleged unlawful protective detention.

"[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011), quoting *Segura v. United States*, 468 U.S. 796, 804 (1984). In addition, "[v]erbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002), citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). "[T]he defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007).

In this case, because the protective detention of Lawrence during West's arrest was lawful, none of his statements constitute fruit of the poisonous tree. *See United*

*States v. Goodale*, 738 F.3d 917, 922 (8th Cir. 2013). Lawrence did not argue that his statements were involuntary or that there was a violation of *Miranda v. Arizona*, 384 U.S. 436, 448-450 (1966), so those issues are not considered.

Lawrence's request for suppression of his statements should be denied.

### IV. Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress (Doc. 20) be **denied**.

Further, the parties are advised that they have until July 19, 2017, to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of July, 2017.